IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSEPH T., | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 21-cv-06587 |
| v. | ) |
| | ) Judge Andrea R. Wood |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Joseph T. seeks review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423. After a hearing before an administrative law judge ("ALJ"), the ALJ denied Plaintiff's claim for benefits, finding that his only severe impairments were degenerative disc disease and obesity. The ALJ further found that Plaintiff had only mild mental impairments and discounted a psychiatrist's diagnosis as unsupported by the record and improperly based on subjective reports. After the ALJ's denial but before the Appeals Council reviewed the decision, Plaintiff submitted new evidence: mental health records obtained shortly after the ALJ's denial. The Appeals Council declined to review Plaintiff's case finding that, in its view, the new evidence did not relate to the period prior to the denial. Plaintiff has now appealed. For the reasons stated below, the Court finds that the Appeals Council erred by rejecting the new evidence as not time relevant. Accordingly, the case is remanded to the agency for proceedings consistent with this opinion.

## BACKGROUND

Plaintiff filed the underlying Title II application for disability insurance benefits on January 27, 2020, claiming a disability with an onset date of September 14, 2018 (Admin. R. ("A.R.") at 24, Dkt. Nos. 10-1, 10-2, 10-3.) Plaintiff claimed that he had been unable to engage in substantial gainful activity since September 14, 2018 due to his obesity and physical issues relating to a back injury from a car crash, as well as mental impairments. (*Id.* at 26–27.) His claim was initially denied on June 5, 2020, and denied again on reconsideration on October 15, 2020. (*Id.* at 24.) The ALJ held a telephonic hearing on March 16, 2021,[1] and then issued a decision denying Plaintiff's application on March 31, 2021. (*Id.* at 24, 35.)

In denying his application, the ALJ found that Plaintiff had two severe impairments: degenerative disc disease and obesity. (*Id.* at 26.) However, the ALJ found that Plaintiff had failed to establish that his diagnoses for anxiety and post-traumatic stress disorder ("PTSD") qualified as severe medically determinable impairments. (*Id.* at 27.) In her ruling, the ALJ noted that Plaintiff claimed that his physical and mental ailments stemmed from a March 2017 car crash. The two types of ailments are somewhat intertwined. As to his physical symptoms, Plaintiff testified at his hearing that since the car crash, he has experienced radiating pain down to his feet, can only walk for about 50 feet before needing to rest, and has used an unprescribed cane for two-and-a-half years. (*Id.* at 30.) Plaintiff has undergone MRIs and doctors have suggested conservative care rather than surgery. (*Id.*) As treatment, he has undergone "physical therapy, epidural steroid injections, medications, and an implanted spinal cord stimulator," all of which have been at least temporarily successful. (*Id.* at 31.) Still, the ALJ noted that Plaintiff's

---

[1] The ALJ noted that the hearing was held telephonically "due to the extraordinary circumstance presented by the Coronavirus Disease 2019 (COVID-19) Pandemic." (A.R. at 24.)

reported symptoms were not supported by "objective evidence, such as imaging or neurological signs." (*Id.*)

As to his mental impairments, the ALJ noted that Plaintiff's diagnosis came after a single meeting via videoconference with a psychiatrist, Dr. Mark Amdur[2]—who the ALJ described as retained by Plaintiff's attorney—during which Dr. Amdur reached his conclusions "based almost entirely on [Plaintiff's] reported symptoms." (*Id.* at 27.) Dr. Amdur's evaluation does not state why he conducted the interview, which took place in December 2020, via videoconference; but it is likely, given the time period, that the interview could not be conducted in person due to the coronavirus pandemic. (*Id.* at 727.) The ALJ stated that Dr. Amdur noted only two objective abnormalities—that Plaintiff's affect was "markedly depressed" and that "[a]t times, [he] was circumstantial." (*Id.* (quoting *id.* at 731).) In addition, the psychiatrist noted that, at one point, he had to pause testing due to an "eruption of panic symptoms" from Plaintiff, a situation on which Dr. Amdur did not elaborate. (*Id.* (quoting *id.* at 731).) But even if those impairments were medically determinable, the ALJ went on, nothing in the longitudinal record supported a finding that significant mental limitations persisted for a continuous twelve-month period during the claim period. (*Id.*)

Plaintiff testified that, when driving, he occasionally experiences what the ALJ described as "feeling panicky." (*Id.* at 30.) Dr. Amdur's notes indicate that Plaintiff described these instances as panic attacks and that he discussed a recent incident in which he was driving to his

---

[2] Dr. Amdur had not treated Plaintiff before this meeting; his evaluation states that he saw Plaintiff at Plaintiff's attorney's request "for a psychiatric diagnostic evaluation." (A.R. at 727.) Dr. Amdur has significant experience in this field; he has consulted for the Social Security Administration and served on the consultive examination panel for the Illinois Disability Determination Service intermittently since 1981, along with his private practice. (*Id.* at 733–34.) He estimates that he has performed 6,000 psychiatric evaluations for the Social Security Administration (*id.* at 739), and between 10,000 and 15,000 total in his career (*id.* at 738).

3

girlfriend's house, had a panic attack, and had to turn around and return home. (*Id.* at 728.) Dr. Amdur also described depressive symptoms (*id.*) and diagnosed Plaintiff with "[PTSD] with Depressed Mood, Panic, Agoraphobia, and Obsessional Thinking" (*id.* at 732). Dr. Amdur's evaluation also states that Plaintiff noted his "anxiety, panic, and depression began in 2017." (*Id.* at 728.) In addition, Plaintiff discussed suicidal thoughts with Dr. Amdur, equivocating when asked when it was last a serious thought and eventually stating that the last time suicidal thoughts were troubling or serious was about one month earlier. (*Id.*) Ultimately, the ALJ did not find Dr. Amdur's evaluation persuasive. (*Id.* at 32.) She criticized it as not consistent with the longitudinal record and not supported by the examination performed because it simply reiterated Plaintiff's self-reported symptoms. (*Id.*) And even if the examination supported its conclusions, the ALJ continued, "the absence of any mental limitations in the remainder of the record would indicate that these symptoms neither lasted nor should be expected to last for a continuous twelve months." (*Id.* at 32–33.)

To conclude that Plaintiff's mental impairments were not severe, the ALJ applied the Paragraph B criteria. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(b); *Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008). The four Paragraph B criteria are: "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(b). The ALJ found that Plaintiff had mild limitations in understanding, remembering, or applying information. She noted that he had scored 20 out of 29 on the Montreal Cognitive Assessment ("MoCA"),[3] but that the

---

[3] The ALJ did not explain what a score of 20 out of 29 indicates, and the parties do not address the issue in their briefing. However, the organization that promulgates the MoCA test states that a score between 18 and 25 indicates mild cognitive impairment. *Frequently Asked Questions*, MoCA Cognition, https://mocacognition.com/faq/ (last visited Sept. 22, 2023). And another court in this District has observed that "[a] score of 26 or above on the MoCA is considered normal." *Reynolds v. Berryhill*, No. 17

4

test was incomplete (A.R. at 27); in his evaluation, Dr. Amdur stated that one item, "Trail Making Test," could not be administered over videoconference (*Id.* at 731). The ALJ also criticized that there was only one mental assessment in the record, which was obtained three months before the hearing and unsupported by the longitudinal record. (*Id.* at 27–28.) While Plaintiff stated that he cannot concentrate on reading, the ALJ noted that he watches game shows on television. (*Id.* at 28.) She also found that Plaintiff had no limitation on interacting with others, criticizing Dr. Amdur's opinion that Plaintiff's mental impairments would interfere with his ability to relate with coworkers and supervisors as based on subjective reports and noting that his panic symptoms do not appear in other examinations. (*Id.*) The ALJ found mild limitations in concentrating, persisting, or maintaining pace. She again dismissed Dr. Amdur's opinion as unsupported in the longitudinal record. (*Id.*) Finally, the ALJ found mild limitations in adapting or managing oneself. She noted that Plaintiff can grocery shop, cook with a microwave, and manage his own hygiene, and that he has support from family and his girlfriend. (*Id.*)

While Plaintiff did not obtain a mental health diagnosis before Dr. Amdur's evaluation, earlier record materials hint at mental ailments. In a May 2020 functional report, Plaintiff stated that he was "very poor at handling stress," and that he did not handle changes in routine "well at all." (*Id.* at 288–89.) Before his ALJ hearing, he stated in response to a question about new mental conditions: "My mental condition has worsened as the pain and medication are taking a toll on relationships as well as my lack of sleep are all causing me to have suicidal thoughts and episodes of anger. I am currently awaiting confirmation from a psychologist/therapist." (*Id.* at 330, 335.) Regarding the lack of longitudinal support for his purported mental illness, Plaintiff

---

C 6049, 2018 WL 6327004, at *2 (N.D. Ill. Dec. 4, 2023). The ALJ does not provide any such explanation or context in dismissing the significance, if any, of Plaintiff's score of 20.

5

testified that he had difficulty finding good doctors who accepted his insurance and further that his mental symptoms essentially snuck up on him—that he "didn't realize . . . that this was affecting [him] until . . . it started to progress." (*Id.* at 51.) He further testified that he thought the symptoms would disappear and that family members eventually persuaded him that he should seek treatment. (*Id.* at 51–52.) The ALJ noted that the longitudinal record showed that Plaintiff "consistently denied anxiety and depression symptoms." (*Id.* at 28 (citing *id.* at 743, 769, 961).) However, at the same January 2021 doctor's visit at which Plaintiff reported no depression, he requested therapy and a psychiatry referral for PTSD. (*Id.* at 744.)

The ALJ denied Plaintiff's application on March 31, 2021. Shortly after, Plaintiff's counsel submitted new, additional evidence to the Appeals Council: a patient plan and referral communication form, dated April 15, 2021, from the Will Community Health Center Bolingbrook ("Will CHC"). (*Id.* at 10–17.) According to the records, Plaintiff was assessed for anxiety and depression, major depressive disorder, a severe episode of recurrent major depressive disorder, and PTSD. (*Id.* at 13.) Will CHC referred Plaintiff to Dr. Danish Hangora for evaluation and treatment. (*Id.* at 10.) The results of the referral, however, are not in the record.

On October 12, 2021, the Appeals Council denied Plaintiff's request for review. (*Id.* at 1–4.) In doing so, it noted that Plaintiff's counsel had "requested an extension of time to submit additional evidence," which evidence "ha[s] been received and considered." (*Id.* at 1.) However, the Appeals Council went on to find:

> You submitted medical records from Will CHC Bolingbrook, dated April 15, 2021 (9 pages). The Administrative Law Judge decided your case through March 31, 2021. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before March 31, 2021.

6

(*Id.* at 2.) Consistent with the Appeals Council's instructions in its denial of review, Plaintiff now seeks review in this Court. (*Id.*)

## DISCUSSION

Plaintiff challenges three decisions during his administrative proceedings. First, he argues that the Appeals Council erred by not considering the Will CHC records. Second, he argues that the ALJ erred by finding that his mental impairments were non-severe. And third, he argues that the ALJ improperly evaluated the consistency of his reported symptoms.

Federal courts review "an ALJ's disability determination deferentially." *Weatherbee v. Astrue*, 649 F.3d 565, 568 (7th Cir. 2011). On review, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) (internal quotation marks omitted). Instead, the Court's review is limited to the rationales provided by the ALJ and determines whether her findings are supported by substantial evidence or are premised on legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). The standard is "generous, [but] not entirely uncritical." *Id.* "Evidence is substantial when it is sufficient for a reasonable person to conclude that the evidence supports the decision." *Sims v. Barnhart*, 309 F.3d 424, 428 (7th Cir. 2002).

In this case, however, the Court need not reach the substance of the ALJ's decision because it finds that the Appeals Council erred in denying review. Since the Appeals Council found that Plaintiff's new evidence—dated fifteen days after his denial of benefits—"d[id] not relate to the period at issue" (A.R. at 2), it "found no reason . . . to review the [ALJ's] decision" (*id.* at 1). Plaintiff asserts that the refusal by the Appeals Council to review substantively his new evidence was legal error that requires remand. The Court agrees and, because it remands the case to the Appeals Council, declines to evaluate the ALJ's substantive decision at this time. *See*

7

*Casey v. Berryhill*, 853 F.3d 322, 330 (7th Cir. 2017) (remanding case to the Appeals Council for it to render a final decision or remand to the ALJ for further proceedings due to the Appeals Council's "arbitrary dismissal of [plaintiff's] request for review").

The Appeals Council will, if a claimant shows good cause for not submitting evidence before the ALJ, review a case if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970(a)(5), (b); 416.1470(a)(5), (b). The level of this Court's review of that decision depends upon the Appeals Council's reasoning in denying review. The Appeals Council's decision is unreviewable by this Court if the Appeals Council "deemed the evidence new, material, and time-relevant but denied plenary review of the ALJ's decision based on its conclusion that the record—as supplemented—does not demonstrate that the ALJ's decision was contrary to the weight of the evidence." *Stepp v. Colvin*, 795 F.3d 711, 722 (7th Cir. 2015) (internal quotation marks omitted). In other words, if the new evidence qualifies for consideration but would not alter the ALJ's conclusion, the Court must affirm the Appeals Council's decision. In contrast, if the Appeals Council determined that the new evidence did not qualify for consideration—that it was "not new and material, and therefore . . . non-qualifying under the regulation"—the Court may "review that conclusion for legal error." *Id.* (internal quotation marks omitted).

To determine on what basis the Appeals Council denied review in this case, the Court turns to the language of the denial decision. Another court in this District recently addressed identical Appeals Council language regarding relation of new evidence to the time period at issue in an Appeals Council denial of review. *See Rita Mary K. v. Kijakazi*, No. 21 C 4598, 2022 WL

17583780, at *3 (N.D. Ill. Dec. 12, 2022). There, the Appeals Council denied review of an ALJ's decision, stating:

> You submitted evidence from Felisa Gutierrez, LCSW, March 22, 2021, 7 pages; and Edwin Smolevitz, MD, 11 pages. The Administrative Law Judge decided your case through January 14, 2021. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before January 14, 2021.

*Id.* The *Rita Mary K* court found that this language indicated that the Appeals Council "rejected the proffered additional records as non-qualifying because they did not relate to the period at issue," and reviewed the Appeals Council's decision *de novo*. *Id.* at *4 (internal quotation marks and alterations omitted). Other courts addressing the same boilerplate language in a denial of review similarly have concluded that such denials are reviewable. *E.g.*, *Kennedy v. Kijakazi*, No. 22-2258, 2023 WL 1990303, at *2–3 (7th Cir. Feb. 14, 2023)[4]; *Joseph R. v. Comm'r of Soc. Sec.*, No. 4:19-cv-04255-SLD-JEH, 2020 WL 9074877, at *7 (C.D. Ill. Nov. 17, 2020) ("[T]he Court finds that the Commissioner is simply wrong in his position that the [Appeals Council's] rejection of the additional evidence . . . was a discretionary decision not subject to court review."). This Court agrees with that interpretation and reaches the same conclusion with respect to the same verbiage as used to deny review of Plaintiff's claim. In short, this Court finds that the Appeals Council did not conclude whether the new evidence, if considered, would affect the ALJ's decision. *Stepp*, 795 F.3d at 722.

The additional evidence relates to a diagnosis obtained during the relevant time period, which rebuts the Commissioner's argument that the mere fact that it post-dates Plaintiff's denial of benefits renders it unhelpful to the Appeals Council. *See Farrell v. Astrue*, 692 F.3d 767, 771

---

[4] *Kennedy* is an unpublished Seventh Circuit order issued after January 1, 2007. Although not precedential, the order's reasoning is persuasive and provides a useful point of comparison here. *See* Fed. R. App. P. 32.1(a); 7th Cir. R. 32.1(b).

(7th Cir. 2012) (finding that a post-denial diagnosis of fibromyalgia related to the relevant time period because it "buil[t] on the allusions to possible fibromyalgia" in medical reports obtained during the claim period). "[J]ust because the records were created after the [ALJ's] decision does not mean they are unrelated to the period." *Arndt v. Kijakazi*, No. 4:19-CV-98-TLS, 2021 WL 5905646, at *5 (N.D. Ind. Dec. 14, 2021) (citing *Newbury v. Astrue*, 321 F. App'x 16, 18 n.2 (2d Cir. 2009); *Farrell*, 692 F.3d at 771). Nothing indicates that Plaintiff seeks consideration of the Will CHC records to support some new theory of disability; instead, the records "concern[] diagnoses and treatments that [Plaintiff] obtained" before the ALJ's denial of benefits. *Bjornson v. Astrue*, 671 F.3d 640, 642 (7th Cir. 2012).

      Nor was the Appeals Council's error harmless. *Butler v. Kijakazi*, 4 F.4th 498, 504 (7th Cir. 2021) ("[T]he harmless error standard applies to judicial review of administrative decisions."). Plaintiff's new evidence, while somewhat scant in detail, references a "recent diagnosis" of anxiety, depression, panic attacks, and PTSD. (A.R. at 11–12.) Presumably this diagnosis is that provided by Dr. Amdur, which is dated December 8, 2020. (*Id.* at 727, 732.) Will CHC appears to have concurred with Dr. Amdur's diagnosis and considered Plaintiff's symptoms severe enough that it referred him to Dr. Danish Hangora for additional evaluation and treatment. (*Id.* at 10, 14.) Given that a constant critique from the ALJ was that only a single evaluation supported Plaintiff's claims of mental impairments and that the longitudinal record did not support a finding that his mental impairments were severe, additional evidence on that point could alter the basis of her reasoning. True, as the Commissioner points out, the results of the referral to Dr. Hangora are not in the record. But what conclusion should be drawn from this fact is an issue to for the Appeals Council to decide in the first instance, not this Court. Indeed, if the Appeals Council found the absence of Dr. Hangora's notes troubling, its concern is not

10

evident from the record. And if the Appeals Council determines on remand that there is insufficient evidence to support a reversal of the ALJ's decision, it should so state and not simply dismiss the evidence as non-qualifying.

Lastly, the Commissioner argues that the new evidence is futile because it does not establish that Plaintiff had mental impairments for 12 continuous months before March 31, 2021, when the ALJ denied his application for benefits. "The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). But contrary to the Commissioner's argument, nothing in the text of the regulation indicates that this 12-month period must be completed "during the period considered by the ALJ." (Comm'r's Mot. for Summ. J. at 7, Dkt. No. 20.) Indeed, the text of the regulation undermines that interpretation; if the 12-month period must be completed during the period the ALJ considers, the regulation's allowance for an impairment that "***can be expected*** to last for a continuous period of not less than 12 months" would be meaningless. 20 C.F.R. § 404.1505(a) (emphasis added). Nor does the Commissioner point to any regulation or case stating that a claimant must ensure the 12-month period is satisfied prior to seeking or obtaining benefits.

Plaintiff presented new evidence that related to a diagnosis obtained during the relevant time period and that bears on the ALJ's rationale for denying Plaintiff's application. Because the Appeals Council rejected the evidence as not time-qualifying, it did not consider its substance. It may well be that the Appeals Council determines that even in light of the new evidence, it should deny review. But it has not yet done so. Because the Court finds that the Appeals Council

11

committed legal error by not considering the additional evidence as time-relevant, the Court declines to reach Plaintiff's additional arguments regarding the merits of the ALJ's decision.

## CONCLUSION

For foregoing reasons, the decision denying Plaintiff's application for disability insurance is reversed and remanded for proceedings consistent with this opinion. Pursuant to Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), it is no longer necessary for parties to style requests for relief as motions for summary judgment. Accordingly, Plaintiff's motion for summary judgment in its favor (Dkt. No. 11) and the Commissioner's motion for summary judgment in its favor (Dkt. No. 19) are terminated as moot. The Clerk is directed to enter Judgment in favor of Plaintiff.

ENTERED:

Dated: September 27, 2023

_____
Andrea R. Wood
United States District Judge